913 So.2d 334 (2005)
James Parker SNOW, Appellant
v.
Robert JOHNSON, Commissioner, Mississippi Department of Corrections, and Michael C. Moore, Attorney General for the State of Mississippi, Appellees.
No. 2003-CP-02332-COA.
Court of Appeals of Mississippi.
April 12, 2005.
*335 James Parker Snow, appellant, pro se.
Office of the Attorney General by Jane L. Mapp, attorney for appellees.
Before LEE, P.J., MYERS and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. In 1993, James Snow pleaded guilty to crimes for which his sentences were parole eligible. In 1996, he was convicted as a habitual offender and sentenced to a total of six years. As a habitual offender, these sentences were not parole eligible. When his time sheets reflecting his 1996 sentences were calculated, the Mississippi Department of Corrections re-calculated his parole eligibility and tentative release dates. These eligibility dates were delayed by six years. The Mississippi Department of Corrections later learned that their procedure for calculating parole eligibility and release dates for inmates serving sentences that were parole eligible and later serving sentences that were mandatory conflicted with Mississippi Code Annotated Section 99-19-21 (Rev.2000). Snow received a corrected time sheet indicating that he was not eligible for parole or for trusty status. Snow filed a writ of *336 habeas corpus demanding that the Mississippi Department of Corrections re-calculate his time. The Jasper County Circuit Court denied this relief. Snow appeals, raising the following issues:
I. WHETHER THE MISSISSIPPI DEPARTMENT OF CORRECTIONS HAD THE AUTHORITY TO DENY SNOW A PAROLE ELIGIBILITY DATE
II. WHETHER THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ERRED IN COMPUTING SNOW'S SENTENCES FOR PURPOSES OF PAROLE ELIGIBILITY
III. WHETHER THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ERRED IN DECLARING SNOW TO BE SERVING THE LAST SIX YEARS OF HIS SENTENCE AS MANDATORY
IV. WHETHER THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ERRED IN DENYING SNOW ELIGIBILITY FOR TRUST EARNED-TIME STATUS
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On December 7, 1993, James Parker Snow pleaded guilty in Newton County Circuit Court to ten counts of profane and indecent language over the telephone with intent to harass and was sentenced to a total of sixteen years in the custody of the Mississippi Department of Corrections (MDOC) with parole eligibility. On October 30, 1996, Snow received a time sheet which showed that he had been awarded the fifty percent earned time allowance of eight years, plus 180 days of meritorious earned time. This computation gave him a parole eligibility date of January 2, 1997 and a conditional discharge date of January 2, 2001.
¶ 4. On September 5, 1996, following a jury trial, the Jasper County Circuit convicted Snow as a habitual offender on three additional counts of profane and indecent language over the telephone. He was sentenced to three consecutive two year sentences, for a total of six years, to run consecutively with his earlier sentences. Because Snow was convicted as a habitual offender, these sentences were mandatory with no possibility of parole. Miss.Code Ann. § 99-19-81 (Rev.2000). On December 4, 1996, Snow was given a new time sheet. His six years were added to his parole and additional release dates, with his new earliest parole eligibility parole date as January 2, 2003, and his new earliest conditional discharge date being January 2, 2007. These dates were exactly six years delayed from the previous eligibility date given to Snow.
¶ 5. Snow entered trusty status, pursuant to Miss.Code Ann. § 47-5-138.1 (Rev. 2004), on July 1, 1999. He remained on trusty status until April 10, 2000. As such, he received ten days credit off the non-mandatory portion of his sentence for every thirty days he remained in trusty status. The credit Snow received for trusty time is reflected in his time sheets, and his tentative release date was advanced from January 2, 2007 to September 29, 2006.
¶ 6. Snow was placed in trusty status again on December 28, 2000. However, Snow began serving his habitual offender sentences on September 29, 2000.[1] Therefore, he was no longer eligible to receive the trusty time allowance. Miss.Code Ann. § 47-5-138.1(2) (Rev.2004).
*337 ¶ 7. On June 21, 2001, Snow filed a grievance with MDOC's Administrative Remedies Program inquiring as to why he was not receiving credit for trusty time. The Department responded that Snow was in trusty status and that he would receive the trusty time allowance. However, when the records department checked Snow's time sheet, they found that Snow was not entitled to the trusty time allowance and that his time sheet incorrectly indicated a parole eligibility date. On November 28, 2001, Snow received a corrected time sheet informing him that he was not eligible for trusty status. The time sheet showed that his earliest discharge date was September 29, 2006, and his parole eligibility date was removed.
¶ 8. Snow filed a petition for writ of habeas corpus, alleging error in MDOC's interpretation of parole statutes. In his complaint, Snow asked that MDOC be required to reflect a parole eligibility date and to allow him to receive "good time" incentives once he is eligible for parole. The circuit court dismissed Snow's complaint, finding that MDOC was not required to recompute Snow's sentences.

ANALYSIS
I. WHETHER THE MDOC ERRED IN COMPUTING SNOW'S SENTENCES
II. WHETHER THE MDOC ERRED IN DECLARING SNOW TO BE SERVING THE LAST SIX YEARS OF HIS SENTENCES AS MANDATORY
¶ 9. In 1996, when the jury convicted Snow as a habitual offender, it was the practice of MDOC to simply add subsequent consecutive mandatory terms to existing parole eligibility, conditional release, and maximum release dates. Initially, Snow's parole eligibility and release dates were calculated in this way. The practice is illustrated in Williams v. Puckett, 624 So.2d 496, 498 (Miss.1993), a case upon which Snow relies to argue that he is entitled to receive a parole eligibility date.
¶ 10. MDOC was required to change its policy regarding its calculation of parole eligibility dates for habitual offenders serving consecutive sentences, because their former methods of calculating parole eligibility conflicted with Mississippi Code Section 99-19-21(1) (Rev.2000). This section states: "When a person is sentenced to imprisonment on two (2) or more convictions, the imprisonment on the second, or each subsequent conviction shall, in the discretion of the court, commence either at the termination of the imprisonment for the preceding conviction or run concurrently with the preceding conviction."
¶ 11. MDOC has instituted an administrative correction of their prior misinterpretation of the law. Under the current practice of MDOC, when an offender who is serving a parole eligible sentence subsequently receives a consecutive mandatory sentence, the offender must complete the term of imprisonment on the first sentence before the second or subsequent consecutive mandatory sentence begins to run. Under MDOC's current policies, an offender does not complete his first sentence until the conditional discharge date, or what is now known as his tentative release date. Under MDOC's former policies, the offender would serve a portion of his sentence, until his parole eligibility date, then he would begin serving his mandatory sentence. After his mandatory sentence was completed he would recommence serving the remainder of his original sentence. Such a practice is contrary to Mississippi Code Annotated Section 99-19-21.
¶ 12. To support his argument that he is entitled to parole, Snow relies on *338 Hill v. State, 838 So.2d 994 (Miss.Ct.App. 2002). In that case, the offender, who was serving both mandatory and non-mandatory sentences, was given a parole date, because the offender was serving his mandatory sentences before serving his non-mandatory sentence. Id. at 998(¶ 12). Snow believes that this Court should rely on Hill because it was decided on November 19, 2002, whereas MDOC applied its new interpretation of the law on or before November 28, 2001. However, there is an important difference between Hill and the case sub judice. In Hill, the defendant received three separate sentences, two of which were imposed as a habitual offender, all given on the same day. Id. at 995(¶ 2). Because Hill's sentences were given on the same day, MDOC was free to allow the offender to serve his habitual offender sentences before serving his non-mandatory sentence. Because Hill's sentences were given on the same day, the mandates of § 99-19-21 were not at issue. In the present case, Snow's non-mandatory sentences were given prior to his sentences as a habitual offender. In order to comply with § 99-19-21, Snow is required to finish serving his non-mandatory sentences before he can begin serving his mandatory sentences.
¶ 13. Hill argues that § 99-19-21 is inapplicable because the section does not address the commutation of consecutive sentences. He urges this Court to apply Miss.Code Ann. § 47-5-139(2) (Rev.2004). This section states, "An offender under two (2) or more consecutive sentences shall be allowed commutation based upon the total term of the sentences." He argues that this section should be interpreted to allow his non-mandatory sentences to run concurrently with his mandatory sentences, thus entitling him to be released from prison. We are unable to grant such relief. In Perkins v. Cabana, 794 F.2d 168, 169 (5th Cir.1986), the prisoner argued that Mississippi's habitual offender statute "conflicts with the statutory provisions that authorize the State Board of Corrections to regulate and award earned time credits, and that define parole eligibility. See Miss.Code Ann. §§ 47-5-138, 47-5-139, 47-7-3." The Fifth Circuit rejected this argument, explaining that "the legislature intended them [statutes designed to award earned time credits and define parole eligibility] to maintain the enhanced penalty that § 99-19-81 imposes on habitual offenders, a penalty that includes the denial of certain privileges available to other prisoners." Id. at 170. We hold that MDOC should be allowed to interpret its statutes in a manner that allows the Mississippi Parole Board to impose an enhanced penalty for habitual offenders. MDOC's interpretation of § 99-19-21 as it applies to subsequent mandatory sentences is correct.
III. WHETHER THE MDOC HAD THE AUTHORITY TO DENY SNOW A PAROLE ELIGIBILITY DATE
¶ 14. MDOC changed its policies regarding parole eligibility for offenders serving subsequent mandatory sentences because it found that its former policies conflicted with statutory law. In Taylor v. Mississippi State Prob. and Parole Bd., 365 So.2d 621 (Miss.1978), MDOC and the Mississippi Parole Board changed their methods of calculating parole eligibility in order to correct a prior misinterpretation of Mississippi Code Annotated Section 47-7-3. The Mississippi Supreme Court held that "administrative correction of a prior misinterpretation of parole laws as applied to the appellant did not violate the ex post facto clause of the United States or Mississippi Constitutions." Id. at 622 (citations omitted). There is no constitutional prohibition on MDOC's new interpretation of *339 § 99-19-21. Moreover, because the Mississippi parole statutes use the word "may" rather than "shall," prisoners have "no constitutionally recognized liberty interest in parole." Vice v. State, 679 So.2d 205, 208 (Miss.1996) (citations omitted).
IV. WHETHER THE MDOC HAD THE AUTHORITY TO DENY SNOW ELIGIBILITY FOR TRUST EARNED-TIME STATUS
¶ 15. Snow's eligibility to earn trusty time is governed by Mississippi Code Section 47-5-138.1 (Rev.2004). This section states:
(1) In addition to any other administrative reduction of sentence, an offender in trusty status as defined by the classification board of the Department of Corrections may be awarded a trusty time allowance of thirty (30) days' reduction of sentence for each thirty (30) days of participation during any calendar month in an approved program while in trusty status, including satisfactory participation in education or instructional programs, satisfactory participation in work projects and satisfactory participation in any special incentive program.
(2) An offender in trusty status shall not be eligible for a reduction of sentence under this section if:
(a) The offender was sentenced to life imprisonment;
(b) The offender was convicted as an habitual offender under Sections 99-19-81 through 99-19-87;
(c) The offender was convicted of a sex crime;
(d) The offender has not served the mandatory time required for parole eligibility, as prescribed under Section 47-7-3, for a conviction of robbery or attempted robbery through the display of a deadly weapon, carjacking through the display of a deadly weapon or a drive-by shooting;
(e) The offender was convicted of violating Section 41-29-139(a) and sentenced under Section 41-29-139(b) or XX-XX-XXX(f); or
(f) The offender was convicted of trafficking in controlled substances under Section 41-29-139.
¶ 16. Snow concedes that MDOC did not err in denying him eligibility for trusty status on June 6, 2001 and admits that he was not eligible for trusty status at that time. However, he argues that he is now eligible for trusty status because he claims that he was eligible for parole on January 2, 2003. Because Snow began serving his mandatory sentences totaling six years on September 29, 2000, he will be serving his sentences as a habitual offender until September 29, 2006. Snow is currently serving his habitual offender sentences, so he remains ineligible for trusty status. This argument is without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF JASPER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JASPER COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] This date was his original conditional discharge date for his 1993 sentences, less the trusty time he earned in 1999 and 2000.